

U.S. Department of Justice

*United States Attorney*
*Eastern District of New York*

CMM
F. #2015R01489

*610 Federal Plaza*
*Central Islip, New York 11722*

July 12, 2023

<u>By ECF</u>

The Honorable Joan M. Azrack
United States District Judge
United States District Court
Eastern District of New York
100 Federal Plaza
Central Islip, New York 11722

      Re:    United States v. Harendra Singh
                <u>Criminal Docket No. 15-450 (S-1) (JMA)</u>

Dear Judge Azrack:

        The government respectfully submits this letter, pursuant to section 5K1.1 of the United States Sentencing Guidelines (the "Guidelines" or "U.S.S.G.") and Title 18, United States Code, Section 3553(e), in connection with the July 26, 2023 sentencing of Harendra Singh. As described more fully below, the defendant's cooperation provided substantial assistance to the government in connection with its investigation, prosecution and conviction of former Nassau County Executive Edward Mangano and his wife, Linda, in <u>United States v. Mangano et al.</u>, 16-CR-540 (S-2) (JMA), a significant public corruption matter involving the corrupt abuse of power by Mangano and the willingness of Singh to pay bribes, including a no-show job for Linda, in order to obtain official action for Singh's benefit, as well as the government's investigation of other public officials, including, but not limited to, former NYC Mayor Bill de Blasio, former Town of Oyster ("TOB") Supervisor John Venditto and former TOB Deputy Supervisor/Town Attorney Leonard Genova. Without any departure, the defendant's advisory Guidelines range is 168 to 210 months' imprisonment.

I.      <u>Procedural Background</u>

        On September 8, 2015, a grand jury in the Eastern District of New York returned a thirteen-count indictment charging the defendant with various fraud-related crimes. Specifically, Singh was charged with: (i) conspiracy to obstruct and impede the due administration of the Internal Revenue Service ("IRS") laws by under-reporting gross receipts and payroll taxes, and related substantive count, in violation of 18 U.S.C. § 371 and 26 U.S.C. § 7212(a) (Counts One and Two); (ii) conspiracy to commit honest services wire fraud and related substantive counts for honest services fraud and bribery, in relation to the TOB Loan Scheme, in violation of 18 U.S.C.

§§ 371, 666(a)(2), 1343 and 1346 (Counts Three through Nine); (iii) conspiracy to commit disaster relief fraud and related substantive counts, in violation of 18 U.S.C. §§ 286 and 1040 (Counts Ten and Eleven); and (iv) evidence tampering and obstruction of justice, in violation of 18 U.S.C. §§ 1512(c)(1) an (2) (Counts Twelve and Thirteen).

On October 17, 2016, the defendant pled guilty before the Honorable Sandra J. Feuerstein, pursuant to a cooperation agreement, to an eight-count Superseding Information charging: (i) conspiracy to commit federal program bribery and honest services wire fraud and related substantive counts, in relation to the TOB Loan Scheme and the Nassau County Contracts Scheme, in violation of 18 U.S.C. §§ 371, 666(a)(2), 1343 and 1346 (Counts One through Four); (ii) conspiracy to commit federal program bribery and honest services wire fraud and related substantive count, in relation to the NYC Water's Edge Bribery Scheme, in violation of 18 U.S.C. §§ 371, 666(a)(2), 1343 and 1346 (Counts Five through Seven); and (iii) obstructing and impeding the due administration of the Internal Revenue laws, in violation of 26 U.S.C. § 7212(a) (Count Eight).

II.     Factual Background

The United States Probation Department's Presentence Investigation Report ("PSR") fully and accurately summarizes the offense conduct. (See PSR ¶¶ 13-81.) This Court also presided over the related prosecution of United States v. Mangano et al., including two trials (Mangano I and Mangano II), and has decided numerous substantive motions. As a result of these trials and the many sentencings and hearings that have already taken place, the Court is well familiar with the facts and circumstances associated with this matter. As such, the government refers the Court to the PSR and the transcripts from Mangano I and Mangano II for a full recitation of the underlying facts and offense conduct. Nonetheless, the government provides a very brief summary of the criminal schemes and Singh's conduct below.

Singh was a prominent businessman and restaurateur on Long Island. At one time, Singh owned at least ten restaurants and ran a large restaurant named H.R. Singleton's in Bethpage, where his operations were headquartered. As part of his restaurant empire, Singh had licenses from the TOB to run facilities on properties owned by the TOB; specifically, the Woodlands and the Tobay Beach Concessions. In addition to his restaurants on Long Island, Singh also owned the Water's Edge, a catering facility in Queens, New York. (PSR ¶¶ 13, 17.)

Singh and Mangano had been friends for over 25 years. Until Mangano ran for County Executive, Singh had never given the Manganos any expensive gifts or other things of value. However, once Mangano entered the race, Singh began to bribe him in exchange for official action. (PSR ¶¶ 17-34.) Among the bribes Singh gave—and Mangano accepted—were a $3,000 office chair in December 2009, a $42,000 discounted food bill for Mangano's campaign in January 2010, a $3,600 massage chair in September 2012, hardwood flooring for the Manganos' house, $19,000 in vacation expenses, and approximately $5,000 towards a luxury watch for the Manganos' son. (PSR ¶¶ 16, 40-51.) Additionally, in April 2020, Singh hired Mangano's wife, Linda, at a yearly salary of approximately $100,000 for a "no-show" job. She remained on Singh's payroll for over four years, with the Manganos collecting over $450,000 from Singh. (PSR ¶¶ 52-53.)

2

Singh bribed Mangano to obtain Mangano's assistance on various matters within Nassau County and the TOB, including millions of dollars of loans the TOB guaranteed for Singh. (PSR ¶¶ 17-34.) Specifically, as a result of Singh's bribes and Mangano's pressure, Singh obtained four loans indirectly guaranteed by the TOB: (i) a $1.5 million line of credit for Tobay Beach from Madison national Bank ("Madison") in June 2010; (ii) a $3.4 million loan for the Woodlands from Madison in May 2011; (iii) a $7.8 million loan for the Woodlands from NDH Capital Corp ("NDH") in November 2011; and (iv) a $12 million loan for Tobay Beach from NDH in July 2012. (PSR ¶¶ 17-25.)

In addition to the loans, Singh bribed Mangano in exchange for official action related to business in Nassau County. (PSR ¶¶ 26-34.) In particular, Mangano used his power to have the Nassau County Purchasing Department award a contract to Singh's bakery to supply bread and rolls to the Nassau County jail valued at nearly $200,000 (the "Bread and Rolls Contract"), and also directed others to award Singh a contract to supply food to the Office of Emergency Management in the aftermath of Hurricane Sandy (the "OEM Emergency Food Services Contract"), a contract that paid Singh approximately $240,000 for 19 days of services.

In addition to bribing Mangano, Singh also bribed Venditto, Genova, TOB Deputy Attorney Frederick Mei and other TOB Officials. For example, Singh gave free limousine rides and discounted parties and food to Venditto, his family and Genova. (PSR ¶¶ 36-39.) Singh gave Mei a total of $70,000 between 2010 and 2012 in connection with the TOB guaranteeing Singh's four loans involved in the TOB Loan Scheme. Singh also paid for Mei's BMW car lease, as well as four overseas vacations. (PSR ¶ 35.) And Singh provided discounted parties and food to countless Nassau County and TOB officials.

Singh's bribery schemes were not limited to Long Island. Singh also engaged in a scheme involving bribe payments to then-NYC Mayor Bill de Blasio. Specifically, Singh paid a series of bribes, in the form of contributions to de Blasio's campaign by Singh, in exchange for assistance in attempting to secure a lease extension on the Water's Edge. (PSR ¶¶ 14, 54-62.)

Finally, with respect to the conduct charged in the Superseding Information, Singh engaged in several schemes to reduce his personal tax liabilities and the tax liabilities of his entities. Specifically, Singh (i) underreported gross receipts and over-reported expenses on corporate tax returns, (ii) underreported gross receipts with respect to the collection of payment of sales tax by his entities, (iii) paid employees in cash or partially in cash, thereby underreporting payroll taxes due, and (iv) underreported his personal income on his personal income tax returns. (PSR ¶¶ 63-70.)

As noted in the PSR, additional relevant conduct undertaken by Singh included disaster relief fraud (PSR ¶¶ 71-76), check kiting (PSR ¶¶ 77-78), and obstructive and/or fraudulent conduct after the execution of a search warrant and subsequent to arrest (PSR ¶¶ 79-81.)

III.     The Presentence Investigation Report

On March 27, 2023, the Probation Department issued the PSR. Probation calculated Singh's adjusted offense level to be 35, including a three-level reduction for acceptance of responsibility. (PSR ¶¶ 82-125.) The PSR also determined that Singh has a Criminal History Category of I, based on a total of zero criminal history points. (PSR ¶¶ 126-131.) Based on an offense level of 35 and a Criminal History Category of I, Singh is subject to an advisory Guidelines sentencing range of 168 to 210 months' imprisonment. (PSR ¶ 166.)

The government agrees with that calculation, and the defendant has not filed any objections to the PSR.

IV.     Substantial Assistance

Singh provided the government with substantial assistance over the course of several years, which included many debriefings, document review, trial preparation and trial testimony. Singh continued to be of assistance during the months-long trials, having testified in both Mangano I and Mangano II. The government suggests that Singh's willing cooperation and testimony are important for the Court to consider in determining the appropriate sentence in this case.

While Singh did not initially cooperate with the government,[1] he eventually agreed to proffer and, over the course of several meetings, fully and honestly disclosed his own criminal conduct, as well as his knowledge of criminal activity carried out by others. Indeed, Singh proffered with the government nearly 20 times before pleading guilty, pursuant to a cooperation agreement, and thereafter continued to meet with the government on numerous occasions.[2] He has acknowledged and accepted responsibility for his own extensive criminal conduct. In addition to taking responsibility for his conduct in the Nassau County Contracts and TOB Loan Schemes, he fully disclosed and took responsibility for other criminal conduct, including but not limited to bribery of former NYC Mayor de Blasio in exchange for official action regarding the Water's Edge lease, disaster relief fraud, tax evasion, check kiting and obstructing justice.

Notably, the information provided by Singh contributed to the October 18, 2016 indictment of the Manganos and Venditto, and the successful approach to Genova by law enforcement, related to the TOB Loan Scheme. For his part, Genova agreed to proffer with the government and, following a grant of immunity, testified at both Mangano I and Mangano II. In

---

[1] Singh was arrested in September 2015; he was released, over the government's objection. Three months later, in December 2015, Singh was remanded to BOP custody, following the government's motion for same, for violating a condition of his release. Singh's first proffer with the government was in April 2016.

[2] Prior to the first trial, the government produced thousands of pages of Section 3500 material constituting statements of Singh concerning the subject matter of his testimony, including over 350 pages of interview notes and reports, emails, calendar entries and audio records. (See 3500-HS-1 to 3500-HS-85.)

March 2018, trial commenced before this Court in Mangano I, and in January 2019, trial commenced before this Court in Mangano II. On March 8, 2019, Mangano was convicted by a jury of four counts related to the TOB Loan Scheme, in violation of 18 U.S.C. §§ 371, 666(a)(1)(B), 1343, 1346 and 1349; the Manganos were also convicted of one count of conspiracy to obstruct justice, in violation of 18 U.S.C. § 1512(k) and Linda Mangano was convicted of obstruction of justice, in violation of 18 U.S.C. § 1512, and two counts of making false statements, in violation of 18 U.S.C. § 1001.

Most notably, Singh testified at both Mangano I and Mangano II, and, in advance of trial, Singh met with the government numerous times to prepare his testimony. He displayed flexibility and worked hard to make himself available to prepare for trial. During Mangano I, Singh testified for twelve days, more than seven of which were under cross-examination, generating almost 2,600 pages of testimony. In Mangano II, Singh testified for five days, three and a half days under cross-examination. His testimony, in particular, strengthened the government's case against the Manganos and provided valuable corroboration to other testimonial and documentary evidence. His testimony at trial was extensive, forthright and candid, and he was subject to vigorous cross-examination by experienced and prepared defense counsel.

In addition, it should also be noted that the government's investigation and prosecution, assisted by Singh and others, has also led to improvements in both County and Town government. While small steps forward, and each nonetheless subject to and mired in politics, both Nassau County and the TOB have created and appointed Inspector Generals, who review various vendor contracts.

In imposing a fair and just sentence, the Court must weigh the defendant's assistance against the seriousness of his criminal conduct. Here, Singh's cooperation facilitated a significant corruption investigation and prosecution. His insider's account of the corrupt processes of the TOB and Nassau County governments was important to the successful prosecution of the officials connected to the TOB Loan Scheme. On the other hand, Singh unquestionably has engaged in (and admitted to) serious criminal conduct, which is reflected in his Guidelines range. At bottom, a review of the sentencing factors set forth in 18 U.S.C. § 3553 and Guidelines § 5K1.1, however, warrants the imposition of a sentence below the Guidelines range.

In sum, taking each § 5K1.1 factor in turn, Singh's cooperation was both "significant" and "useful," in that it led to the successful prosecution of the Manganos, as well as providing significant information against, amongst others, including but not limited to Venditto and Genova. In addition, Singh was truthful and reliable in the information he provided. Finally, Singh was timely in both agreeing to cooperate and resolving his own case by plea. See U.S.S.G. § 5K1.1(a)(1)-(5). Accordingly, although the crimes of conviction are serious, the § 5K1.1 factors here weigh toward a mitigated sentence.

V.      Forfeiture and Restitution

   A.      Forfeiture

In accordance with Rule 32.2, the government previously provided notice to the defendant of its intent to seek forfeiture in the event of his conviction. Fed. R. 32.2(a); see

Superseding Information, ¶¶ 33-34. In this regard, the applicable statutory provision mandates the forfeiture of all property constituting or derived from proceeds traceable to the crimes of conviction. 18 U.S.C. § 982(a)(2)(A). Forfeiture of proceeds is not limited to amounts personally received by the defendant, but includes property under the control of coconspirators. United States v. Capoccia, 402 Fed. Appx. 639, 640 (2d Cir. Dec. 7, 2010).

The government respectfully requests entry of a forfeiture money judgment against the defendant; a proposed Order of Forfeiture is being submitted under separate cover.

B. Restitution

At the time of Mangano's sentencing, Phoenix Life Insurance Company and PHL Variable Life Insurance Company (collectively, "Phoenix"), the holder of the defaulted loans, submitted a restitution affidavit detailing its loss amount on the loans at the heart of the TOB Loan Scheme. As the Court ordered and noted as part of its restitution order in sentencing Mangano, Phoenix sustained $10,630,016.80 in losses from the NDH loans and that "Mangano will be jointly and severally liable with any other defendants who are ultimately found liable for restitution based on Phoenix's losses from the NDH loans." See ECF Dkt. No. 493 at 1. Thus, this Court should order restitution to Phoenix in the amount of $10,630.016.80.

In addition, as part of his plea and cooperation agreement, Singh also agreed to pay restitution to: (i) the IRS, in connection with the federal tax liability of the defendant and all Singh-related entities; (ii) the New York State Department of Taxation and Finance ("NYSDTF") in connection with the defendant's and Singh-related entities' New York State tax liability; and (iii) the Federal Emergency Management Agency ("FEMA") as a result of his criminal activity set forth in the indictment, filed on September 8, 2015.

According to the IRS, the total tax loss to the IRS from Singh's personal income tax returns is $550,327. (PSR ¶ 68; see also ¶¶ 63-67, 70.) According to the NYSDTF, the defendant owes a total of (inclusive of penalties and interest) $9,775,950.48 related to failing to accurately report sales tax collected, and $891,067 (including penalties and interest) in personal income taxes due. (PSR ¶ 60; see also ¶¶ 63-67, 70.) The total loss sustained by FEMA as a result of the defendant's disaster relief fraud is $976,721.25. (PSR ¶ 76.)

Accordingly, the total amount of restitution to be ordered by the Court is $22,824,082.54.

| Victim | Total Loss |
|---|---|
| Phoenix | $10,630,016.80 |
| IRS | $550,327.00 |
| NYSDTF (sales tax) | $9,775,950.48 |
| NYSDTF (personal income tax) | $891,067.00 |
| FEMA | $976,721.25 |
| **TOTAL** | **$22,824,082.54** |

VI.	Conclusion

   Harendra Singh provided substantial assistance in the investigation and prosecution of others who have committed offenses.  Thus, the government urges the Court to consider this cooperation when determining the appropriate sentence for him.

                Respectfully submitted,

                BREON PEACE
                United States Attorney

          By:  /s/
             Catherine M. Mirabile
             Assistant U.S. Attorney
             (631) 715-7850

cc:  Anthony LaPinta, Esq.
    Counsel for Defendant Harendra Singh